IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

CARRIE R. DEVINE                                    3:10-CV-6255-MA

       Plaintiff,                               OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

RICHARD F. MCGINTY
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301
(503) 371-9636

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003
DAPHNE BANAY
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2113

       Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge.

Plaintiff seeks judicial review of the Commissioner's July 27, 2010, final decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-83(f), and an order remanding this matter to the Commissioner for the immediate payment of benefits or for further proceedings.

For the reasons below, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for the immediate payment of benefits.

## BACKGROUND

Plaintiff asserts she has been disabled since October 2006 because of breast cancer and affective mood disorders.

On April 3, 2008, plaintiff and a vocational expert (VE) testified in a hearing before an administrative law judge (ALJ).

On July 14, 2008, the ALJ found plaintiff is able to perform less than the full range of light work that requires her to lift up to 10 lbs occasionally and less than 10 lbs frequently, and to sit, stand, and walk for six hours in an eight-hour work-day with an option to sit or stand at will.

On July 27, 2010, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

2 - OPINION AND ORDER

## **THE ALJ'S FINDINGS**

The Commissioner uses a five-step sequential inquiry to determine whether a plaintiff is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive. The ALJ made the following findings:

Step One - plaintiff has not engaged in substantial gainful activity since September 24, 2006.

Step Two - plaintiff has severe impairments related to chronic left leg pain, upper extremity weakness, status post bilateral mastectomies, mood and pain disorders, and a borderline personality disorder. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Plaintiff also has non-severe impairments related to constipation/irritable bowel syndrome, small vessel ischemia, i.e., low blood supply in the brain, non-cardiac chest pain, and a cognitive "math" disorder.

Step Three - plaintiff's impairments or combination of impairments do not meet or medically equal a listed impairment. 20 C.F.R. §§ 416.920(d), 416.925 and 416.926. Plaintiff retains the residual functional capacity (RFC) to perform less than the full range of light work, during which she is able to lift 10 lbs occasionally and less than 10 lbs frequently. She is able to sit, stand, and/or walk for six hours in an eight-hour workday

3 - OPINION AND ORDER

with a sit/stand at will option.  She should never crouch.  She is able to perform simple one-three step tasks at all times and more complex tasks frequently.

Step Four - plaintiff is unable to perform her past relevant work as a bartender, store manager, officer manager, plant manager, cocktail waitress, or certified nurse's aide.  Based on VE testimony, however, the ALJ found plaintiff is able to perform representative light work such as wafer cleaner, and sedentary work such as table worker and surveillance system monitor, each of which jobs exists in substantial numbers in the Oregon and national economies.

Step Five - based on the above findings, plaintiff is not disabled and, therefore, is not entitled to DIB or SSI.

## LEGAL STANDARDS

The plaintiff has the initial burden of proving she is disabled.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner's final decision must be affirmed if proper legal standards are applied and the ALJ's findings are supported

4 - OPINION AND ORDER

by substantial evidence in the record, *i.e.*, "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); 42 U.S.C. § 405(g).

The court must weigh all the evidence whether it supports or detracts from the Commissioner's final decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The court must uphold the decision, however, even if it concludes that evidence "is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision to remand either for further proceedings or for the immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

5 - OPINION AND ORDER

## ISSUES ON REVIEW

Plaintiff contends the ALJ failed to adequately assess (1) plaintiff's testimony, (2) the psychological impairment evidence from examining physician Rory Richardson, Ph.D, and (3) the VE testimony. As a consequence of those failures the ALJ's determination of plaintiffs RFC was arbitrary and capricious.

## RELEVANT EVIDENCE

The relevant Administrative Record includes the hearing testimony, plaintiff's disability application and work and earnings history reports, and relevant medical records.

### Plaintiff's Evidence.

Plaintiff was 48 years old as of the hearing date. She has a 10th grade education and obtained a GED certificate in 1979. She lives in a four-unit apartment complex. Her rent is paid by the landlord. In exchange, plaintiff collects rent, shows the apartments to potential tenants, and performs some maintenance on the buildings. Her boyfriend does the physical labor associated with the maintenance.

Plaintiff last worked in November 2007 as a waitress and bartender. She had been released to work as long as such work was no more than 10 hours a week and did not involve lifting more than 10 lbs. Plaintiff's past jobs include bookkeeper, office manager, janitor/custodian, cocktail waitress, bartender/cook, and "other office work."

In Spring 2006, plaintiff underwent double mastectomies and breast reconstruction surgery.

In March 2007, plaintiff's ovaries were removed, at which time she suffered an injury to the femoral nerve in her leg. As a result she now experiences spasms for which she is prescribed Gabapentin, an anti-convulsant medication. Although she suffers from pain "all night long" doctors refuse to prescribe pain medication because they tell her the pain is "in her head."

Since her mastectomies, plaintiff has difficult bending her right arm at the elbow and has shooting pains down that arm. She also has difficulty gripping objects or writing.

Plaintiff has arthritis and osteoporosis in her hips, which hurt when she sits or lies down. She is able to sit for about 15 minutes before she needs to move positions. Depending on the type of work she is doing, she is able to sit or stand for up to 15 minutes at a time during an eight-hour work day. She has difficulty walking, especially uphill for more than 50-100 feet. She is exhausted if she walks more than 20 minutes and needs to lay down for 30-60 minutes afterwards.

Plaintiff believes she is capable of lifting and carrying up to 10 lbs. She is unable to lift and carry a vacuum cleaner but is able to push it while vacuuming. She is unable to crouch because when she does so, her left leg hurts and goes numb. If

she is alone, she uses a cane when walking. She frequently falls when she attempts to stand up because of the numbness in her leg.

Plaintiff's right arm hurts when she drives a car. She is often fatigued and has difficulty sleeping. She is able to sleep for up to two hours if she takes sleeping pills.

Plaintiff rarely leaves her home because she is afraid of being around people. She goes out once a week to visit friends at the local Elks Lodge.

Plaintiff began receiving mental health care in 2006 when she was diagnosed with cancer. She stopped treatment "a few months" before the hearing because she was tired of doctors' appointments and felt safer at home. She is prescribed anti-depressant medication.

**Vocational Expert Evidence.**

Vocational Expert (VE) Kay Wise reviewed plaintiff's file and heard her testimony. She testified that plaintiff's past relevant work includes skilled light-medium work as a store manager, office manager, and plant manager, skilled sedentary work as a bookkeeper, semi-skilled light work as a bartender, and semi-skilled medium work as a certified nurses aid.

The VE opined that if plaintiff is able to lift up to 10 lbs occasionally and less than 5 lbs frequently, sit, stand, and walk for 6 hours in an 8-hour workday with an option to stand or sit

at will with no crouching, she would be capable of performing her past relevant sedentary-to-light work as an office manager or bookkeeper. If, however, plaintiff is also limited to performing simple 1-3 step tasks, she would not be able to perform those jobs. Plaintiff would, however, be able to perform unskilled sedentary jobs such as table worker, which involves stuffing envelopes and marking/packaging light merchandise, wafer cleaner, and surveillance system monitor. None of those jobs require public contact. Plaintiff, however, might not be able work in a third of the wafer cleaner jobs if she is unable to use her non-dominant right hand constantly.

Finally, the VE opined if plaintiff needed to lay down for between 30-60 minutes a day several times a day, or miss more than two days of work per month, she would be unemployable.

**Medical Evidence - Treatment.**

**Oregon Health & Science University Hospital (OHSU).**

In November 2006, plaintiff was diagnosed with cancer in her left breast and underwent a double mastectomy. Thereafter, she complained of thoracic pain.

A March 2007 CT Scan and August 2007 lumbar spine MRI showed no evidence of any cord compression or abnormal cord signal.

In October 2007, plaintiff reported left arm and leg pain and weakness. It was caused by "a problem with her epidural anesthesia" when she underwent the mastectomy.

9 - OPINION AND ORDER

In December 2007, plaintiff's left leg was getting stronger. She was able to walk on her heels and toes but was unable to stand on her left leg alone. Her right elbow was mildly tender. Plaintiff was diagnosed with thoracic myelopathy resulting from the epidural anesthesia (recovering), metastatic breast cancer, and a benign lesion at the T-12 vertebra.

In November 2008, plaintiff reported she had torn cartilage in her right forearm and continued to have leg pain.

In June 2009, plaintiff complained of "more body ache and bone pain."

**Lincoln County Community Health Center.**

In December 2006 to December 2007, plaintiff received mental health counseling for "multiple life stressors," including caring for her quadriplegic teenage son, dealing with her cancer diagnosis and treatment, and sending her daughters away to live with their father so that she could focus on caring for her son. She was prescribed medications which were somewhat effective in treating her insomnia and generalized anxiety disorder.

In November 2007, Psychiatric Nurse Practitioner Lynne Clarke assigned a GAF score of 55 (moderate symptoms and difficulty in social, occupational, or school functioning).

In December 2007, plaintiff complained of pain, numbness, and tenderness in her right arm and elbow.

Samaritan Health Center
Samaritan Coastal Clinic
Samaritan North Lincoln Hospital

From January 2006 through July 2009, plaintiff was treated for abdominal pain, constipation, further care relating to her mastectomies, tendonitis in her hand, chest pain, a right ankle sprain, right wrist pain, bilateral knee pain following a fall, a lateral meniscus tear of the right knee, painful clicking in both knees, and generalized body ache and bone pain.

Several of the treating physicians at these facilities have generally referred to a diagnosis and/or history of fibromyalgia, polyarthralgia-myalgia, and migraine headaches.

**Psychological/Medical Evidence - Examination.**

Rory F. Richardson, Ph.D. - Neuropsychologist.

In Spring 2007, Dr. Richardson performed psychodiagnostic and neuropsychological testing and then evaluated plaintiff on behalf of the Department of Disability Services.

He diagnosed Major Depressive Disorder, recurrent and severe, Obsessive Compulsive Disorder, Pain Disorder with psychological factors, Sleep Disorder, Panic Disorder with mild agoraphobia, and Borderline Personality Disorder. Plaintiff also exhibited a tendency towards isolation.

Yong Zhu, M.D. - Rheumatologist.

In June 2009, Dr. Zhu, examined plaintiff at the request of a physician's assistant to evaluate her history of pain caused by

11 - OPINION AND ORDER

polyarthralgia in her hips, knees, feet, and wrists. Plaintiff's joints showed no inflammation and she had normal range of motion along her entire spine. She exhibited tenderness, however, in her knees and hip, and she was "positive for 18/18 fibromyalgia tender points."

A neurologic examination was normal as to muscle strength, sensation distribution, and deep tendon reflex. A CT scan of the abdomen and entire spinal column was unremarkable.

Dr. Zhu opined that, in light of her history, it was "very likely" that plaintiff has fibromyalgia.

**Medical Evidence - Consultation.**

In June 2007, Sharon Eder, M.D., reviewed plaintiff's medical records and opined plaintiff should be able to work by December 2007, because any infirmity arising from her double mastectomy should be non-severe 12 months after the surgery.

**Psychological/Medical Evidence - Consultation.**

In April and June 2007, respectively, psychologists Paul Rethinger, Ph.D., and Robert Henry, Ph.D., reviewed plaintiff's medical records on behalf of the Commissioner.

Dr. Rethinger opined plaintiff has an Affective Disorder and Anxiety Disorder related to depression that causes plaintiff mild restrictions in her daily living activities, mild difficulties in maintaining concentration, persistence, and pace, and moderate difficulties in social functioning.

12 - OPINION AND ORDER

Dr. Henry opined plaintiff suffers from situational depression that results in a mild restriction as to daily living activities, and mild difficulties in maintaining concentration, persistence, pace and social functioning.

## DISCUSSION

**Plaintiff's Testimony.**

The ALJ found "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's later assessment of plaintiff's residual functional capacity.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her

13 - OPINION AND ORDER

symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

The ALJ's adverse finding as to plaintiff's credibility appears to be based in large part on the purported absence of any neurological findings. She stated "[t]he inconsistencies between the claimant's statements to various providers and her testimony at hearing as well as the lack of objective medical support for a number of her physical complaints undermined her credibility."

The record, however, does not support the ALJ's reasoning. There are repeated references in the OHSU medical record to plaintiff's complaints in 2007 about left arm weakness, which the treating physician specifically related to the epidural procedure at time plaintiff underwent the mastectomies. Moreover, in her credibility analysis, the ALJ ignored the opinions of the Samaritan physicians who treated plaintiff, and Dr. Zhu, who

examined her, that plaintiff suffers from fibromyalgia and/or polyarthralgia/myalgia.

Finally, the ALJ also relies significantly on plaintiff's testimony regarding her activities as resident manager of a four-unit apartment building in reaching her opinion that plaintiff is not credible in describing her physical limitations. Plaintiff testified, however, that her role was limited to collecting the rents from the other tenants while her boyfriend performed the physical labor in maintaining the grounds. That testimony is not inconsistent with her claim that she is unable to engage in substantial gainful activity.

On this record, the court concludes the ALJ did not give clear and convincing reasons for not crediting plaintiff's evidence pertaining to her physical limitations.

**Examining Physician Rory Richardson, Ph.D,'s Opinion.**

Dr. Richardson diagnosed Major Depressive Disorder, recurrent and severe, Obsessive Compulsive Disorder, Pain Disorder with psychological factors, Sleep Disorder, Panic Disorder with mild agoraphobia, and Borderline Personality Disorder.

The opinions of examining physicians are entitled to greater weight than the opinions of non-examining physicians. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted

opinions of an examining physician, id., and must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting an examining physician's opinion that is contradicted by another physician. Andres v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ rejected Dr. Richardson's diagnoses in favor of the opinions of the non-examining consulting physician and psychologists. The ALJ also relied on the medical evidence from treating physicians that she referred to throughout her opinion as refuting Dr. Richardson's opinion. Finally, the ALJ found plaintiff's past work experiences belied Dr. Richardson's assessment of her functional abilities.

First, the court finds no valid reason why the ALJ, on this record, would credit the opinions of the consulting physicians over the opinion of Dr. Richardson. Second, the court concludes that the ALJ's rejection of Dr. Richardson's opinion was colored by the following statement in her opinion:

> Dr. Richardson performed a one-time evaluation which Ms. Devine was aware was for the purpose of establishing disability. Her responses to portions of the examination, while not outright malingering, may have been affected by that knowledge and, as a result, do not reflect her past or present level of functioning.

AR at 22. The court rejects this analysis and the premise for it. The court has already concluded the ALJ did not give clear

and convincing reasons for rejecting plaintiff's testimony based on lack of credibility. Moreover, if the ALJ's reasoning was accepted, every examining physician's opinion in disability cases would be subject to the same skepticism.

In the absence of any evidence that plaintiff is a malingerer, or that her evidence otherwise should not be credited as true, the court rejects the ALJ's reasons for rejecting Dr. Richardson's report and the opinions he gives in that report.

**Vocational Expert Testimony**.

The VE's opinion that there are jobs in the national which plaintiff is capable of performing was predicated on the ALJ's hypothetical regarding plaintiff's workplace limitations, which did not adequately take into account either plaintiff's testimony or Dr. Richardson's medical opinion regarding plaintiff's impairments.

Accordingly, the court finds the VE's opinion is not entitled to any weight.

**REMAND**

The issue is whether, in light of the ALJ's errors as set forth above, this court should remand the matter for further proceedings or for the immediate payment of benefits.

On this record, the court concludes a remand for further proceedings is not appropriate. The court credits plaintiff's testimony as true, and based on that evidence, the medical record

17 - OPINION AND ORDER

as a whole and, in particular, Dr. Richardson's opinion, the court concludes this matter should be remanded to the Commissioner for the immediate payment of benefits.

## CONCLUSION

For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for the immediate payment of benefits.

IT IS SO ORDERED.

DATED this 6 day of Feb, 2012.

*/s/ Malcolm F. Marsh*
MALCOLM F. MARSH
United States District Judge